

**ANNE ARUNDEL COUNTY**
M A R Y L A N D

# Office of Law

**Linda M. Schuett, County Attorney**

**County Executive Janet S. Owens**

2660 Riva Road, 4th Floor
P.O. Box 6675
Annapolis, Maryland 21401
410-222-7888

William D. Evans, Jr.
Senior Assistant County Attorney
Wevans@aacounty.org

April 8, 2004

The Honorable Beth P. Gesner
United States Magistrate Judge
United States District Court
101 W. Lombard Street
Baltimore, Maryland  21201

    RE:    <u>Lewis v. Anne Arundel County</u>
              Civil No.: JFM-02-1898

Dear Judge Gesner:

    Pursuant to your Order of February 5, 2004, the following evaluates Mr. Gordon Lewis' claim under the American with Disabilities Act ("ADA"), 42 U.S.C. Sections 12101-12213.

**I. FACTUAL BACKGROUND**

    By way of background, Mr. Lewis began his employment with Anne Arundel County (the "County") in 1990 and was a Police Communications Operator ("PCO") in the County Police Department. He, to this date, continues in his employment with the County.  On November 29, 1996, he was injured in the back while working and filed a workers' compensation claim.  His treating physician opined that Mr. Lewis was 25% totally disabled.  This claim proceeded through the Maryland Workers' Compensation Commission and into the Anne Arundel County Circuit Court.  In May, 2001, Ronald J. Travers, Assistant County Attorney, successfully convinced a jury that the permanent

```
The Honorable Beth Gesner
April 8, 2004
Page 2
```

disability was only at the 18% level (only 11% was deemed attributable to the 1996 accident). The County has fully complied with its obligations under Maryland law.

In early 1999, Mr. Lewis' treating physician further opined that because of the industrial injury, Mr. Lewis should only have to work 6 hours per day out of his 8 hour shift. At that point, Mr. Lewis requested leave without pay under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. Sections 2601-2654. Our physician indicated that he was able to work a full shift. Because of the difference in opinions, the County, pursuant to FMLA, sent him to a neutral physician for a further examination. This physician indicated that Mr. Lewis should be placed on a 6-hour shift. Thereafter, Mr. Lewis was placed on a 6 hour shift, pursuant to FMLA, and the 2 hours were considered as "leave without pay" in accordance with the FMLA and the County Code.

This accommodation created tension in the Police Department because other PCO's had to work overtime to cover for Mr. Lewis. As a result of this situation, Mr. Lewis complained that he suffered a hostile work environment from fellow employees. Because of the scheduling difficulties created by his 6-hour shift and following his request for a transfer, the Police Department began to search for a suitable new position.

In July, 2001, the Police Department found a position for Mr. Lewis in the Central Records' Red Light Enforcement Program, and he was transferred at that time. At the time of transfer, we provided Mr. Lewis with an orthopedic chair for his back. While Mr. Lewis was unhappy as a PCO, it is our understanding that he is pleased with his new position.

The Honorable Beth Gesner
April 8, 2004
Page 3


In November, 2001, the Police Department received a note from Mr. Lewis' treating physician, indicating that he was now physically able to work a 40 hour week. We have increased his employment to full-time with corresponding full employee benefits. In short, the County believes that it has fully and reasonably accommodated Mr. Lewis and complied with the ADA and the FMLA.

In 1999, Mr. Lewis filed a charge with the Equal Employment Opportunity Commission ("EEOC").  We provided the EEOC with records showing the accommodation under FMLA and the ADA.  The EEOC referred this matter to the U. S. Justice Department ("DOJ"). DOJ declined to prosecute this matter. Mr. Lewis then filed suit in this Court.

**II. CASE EVALUATION FACTORS**

Mr. Lewis' claim may be negatively impacted by three facts. First, in the January 8, 2002 decision by the U.S. Supreme Court in <u>Toyota Motor Manufacturing, Kentucky, Inc. v. Williams</u>, 534 U. S. 184 (2002), Justice O'Connor, writing for a unanimous court, held that to be substantially limited in performing manual tasks under the ADA, an individual was required to have an impairment that prevented or severely restricted the individual from doing activities that were of central importance to most people's daily lives and the impairment's impacts were required to be permanent or long term. Under this recent decision, the County believes that Mr. Lewis is not disabled under the ADA.


Second, the County has provided reasonable accommodations in the form of shift reduction while working as a PCO and providing him his new position in

The Honorable Beth Gesner
April 8, 2004
Page 4

the Red Light Enforcement Program.  In addition to complying with the ADA, the evidence will show that the County fully complied with the FMLA. Third, the County has provided Mr. Lewis with full benefits under the Maryland Workers' Compensation Act.

As to any weakness in the County's position, there can be no doubt that Mr. Lewis did receive a work-related injury while working for the Police Department. The issue then becomes whether the work-related injury is a disability under the ADA.

**III.  DAMAGE AWARD EVALUATION**

In the County's view, there is no lost wage claim that is viable.  Thus, the County would view Mr. Lewis' pain and suffering claim in the range of $25,000 to $50,000, if he can establish liability.

**IV. HISTORY OF SETTLEMENT DISCUSSIONS**

In her December 22, 2001 letter, Mr. Lewis' counsel contends that the County owes him $36,014.37. This amount is apparently the leave without pay that Mr. Lewis was granted so that he could work only 6 hours per day.  Moreover, Mr. Lewis's counsel believes that this $36,014.37 should be "tripled" under the ADA. In the writer's view, the County was within its rights to treat the FMLA time as leave without pay. Moreover, the County is not aware of any so-called "triple damage" provision of the ADA. Mr. Lewis' counsel also requested a legal fee of $18,742.43. Her settlement demand of $86,742.43 was rejected by the County's Self-Insurance Fund Committee.

**V.   COUNSEL FEES**

The Honorable Beth Gesner
April 8, 2004
Page 5


    Based on the writer's experience in similar ADA cases, I would anticipate that each side will spend between $50,000 to $60,000 in pre-trial preparation, including deposition fees and expert witness fees. If the matter proceeds to trial, an additional $25,000 can be added.

    We trust that the above fully complies with this Court's February 5, 2004 Order.

                                  Sincerely,


                                  William D. Evans, Jr.


WDE/lal

H:\DATA\SHARED\LAW\WDE\Lewis2\gesnerltr040804.doc

The Honorable Beth Gesner
April 8, 2004
Page 6